UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------X
UNITED STATES OF AMERICA

-against-

S1 12 CR 171 (JPO)

ANDREY ANIKEYEV, et.al.

                    Defendant.
---------------------------------------------------X


**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANT
ANDREY ANIKEYEV'S
<u>PRE-TRIAL MOTIONS</u>**


JAMES J. DiPIETRO, ESQ.
Attorney for Defendant
Andrey Anikeyev
186 Joralemon Street
Brooklyn, New York 11201
(718) 875-4207

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT -------------------------------------------- 1

THE FACTS ------------------------------------------------------------ 2

POINT I -------------------------------------------------------------- 5

      THE ITEMS SEIZED FROM ANDREY ANIKEYEV'S
      BUSINESS LOCATED AT 1122 CONEY ISLAND AVENUE,
      SUITE 209, BROOKLYN, NEW YORK SHOULD BE
      SUPPRESSED AS THEY WERE SEIZED IN VIOLATION
      OF THE FOURTH AMENDMENT

          A) THE DEFENDANT, ANDREY ANIKEYEV, MOVES
             TO JOIN IN AND ADOPT BY REFERENCE THE
             MOTIONS AND MEMORANDUM OF LAW OF HIS
             CO-DEFENDANTS RELATING TO HIS MOTION
             TO SUPPRESS PHYSICAL EVIDENCE SEIZED
             IN VIOLATION OF THE FOURTH
             AMENDMENT ----------------------------------------- 17

POINT II -------------------------------------------------------------- 18

      THE DEFENDANT, ANDREY ANILEYEV MOVES
      TO JOIN IN AND ADOPT BY REFERENCE THE
      MOTIONS AND MEMORANDUM OF LAW OF HIS
      CO-DEFENDANTS SEEKING TO SUPPRESS EVIDENCE
      DERIVED FROM WIRETAP INTERCEPTIONS

POINT III ------------------------------------------------------------- 19

      THE DEFENDANT IS ENTITLED TO PRETRIAL
      DISCLOSURE OF ANY AND ALL INFORMATION
      FALLING WITHIN THE PURVIEW OF
      BRADY V. MARYLAND AND ITS PROGENY

CONCLUSION ----------------------------------------------------------- 27

i

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------X
UNITED STATES OF AMERICA

                                   S1 12 CR 171 (JPO)

    -against-


ANDREY ANIKEYEV, et. al.

        Defendant.
--------------------------------------------------X

## DEFENADANT'S MEMORANDUM
## OF LAW IN SUPPORT OF MOTIONS

### Preliminary Statement

Defendant Andrey Anikeyev   (hereinafter "defendant" ), respectfully submits this

memorandum of law in support of his pre-trial motions: (a) to suppress physical evidence

pursuant to  Rule 12 (b) (3) (c) of the Federal Rules of Criminal Procedure, on the ground

that the evidence was unlawfully obtained and in violation of defendant's rights under the

Fourth Amendment; (b) to join in his co-defendants' motions seeking the suppression of

his intercepted conversations obtained as a result of unconstitutional electronic

surveillance; and  (c) for an order requiring the government to abide by it's Brady

obligations.

## STATEMENT OF FACTS

The defendant, ANDREY ANIKEYEV, is charged under Indictment SI 12 CR 171 (JPO) with 3 counts for his alleged participation in a health care fraud scheme. He is charged in count two of the indictment with a conspiracy to commit health care fraud along with 35 other co-defendants. In count three of the indictment the defendant is charged with conspiring with 35 others to commit mail fraud. Count four charges the defendant and 35 others with a conspiracy to commit money laundering. Counts two through four plead a time period from, ". . . in or about 2007, up to and including on or about the date of this indictment . . ." The defendant, Andrey Anikeyev, is not charged in count one of the indictment alleging a racketeering conspiracy.

Andrey Anikeyev operates a billing office for acupuncture services located at 1122 Coney Island Avenue, Suite 209, in Brooklyn, New York. The location in which the defendant is employed is leased by his wife who is a licensed acupuncturist.

### SEARCH OF DEFENDANT'S BUSINESS
### LOCATED AT 1122 CONEY ISLAND AVENUE, SUITE 209
### BROOKLYN, NEW YORK

On February 29, 2012 a search warrant was executed at the business premises of Andrey Anikeyev located at 1122 Coney Island Avenue, Suite 209, Brooklyn, New York. (See defendant's Exhibit 1 and 2 attached to his Notice of Motion for a copy of the "Search and Seizure Warrant" and affidavit of Special Agent Michael D. Kelley in support of his application for this search warrant.) For several hours, numerous law enforcement agents searched the Coney Island Avenue, Brooklyn location and seized

2

literally tens of thousands of papers, documents, financial records and numerous computers. Records from 1999 to present were seized from a multitude of acupuncture companies. The rummaging by the agents executing this search warrant also resulted in the seizure of records of an attorney that shared office space at this location.

Andrey Anikeyev has operated a billing office for acupuncture services at this Coney Island Avenue, Brooklyn location for several months prior to the warrant's execution. The premises is leased by his wife who is a licensed acupuncturist. Special Agent Kelley in paragraph 4(d) of his affidavit alleges the defendant is the owner of the billing office located at the subject premises. As such there can be no dispute that the defendant has a legitimate expectation of privacy in the area where the subject of this search and seizure occurred. (See Andrey Anikeyev's affidavit, Exhibit 3 attached to defendant's Notice of Motion.)

A review of the warrant and underlying affidavit in support leads the defendant to believe he is a person aggrieved by an unlawful search and seizure under the Fourth Amendment of the United States Constitution. Specifically the aforementioned warrant is patently overbroad and lacks particularity. Here, the warrant authorized a general exploratory rummaging through the entire business records of the defendant without any guidelines or time period limitations to aid the executing agents in their determination of what may or may not be seized. The agents also seized documents and files that were clearly outside the scope of this search warrant (i.e. an attorney's records).

The accompanying memorandum of law and applicable case law address the defendant's motion to controvert this warrant. In addition the defendant joins in the

3

motions and memorandums of law of his co-defendants that have common questions of fact and law as they relate to this Fourth Amendment issue.

The defendant is confident that this Court will recognize the glaring defects in the search warrant at issue. Of course, the government may assert an inconsistent factual scenario supportive of this warrant. Should it do so, we respectfully urge this Court to conduct a hearing, as would be required in order to make the necessary factual findings under the Federal Rules of Criminal Procedure 12(c).

## TELEPHONE INTERCEPTS AND BRADY

The defendant joins in his co-defendants' motion and memorandum of law seeking the suppression of his telephone conversations that were derived from wiretap interceptions.

In addition, the accompanying memorandum of law supports the defendant's motion for an order requiring the government to abide by its Brady obligations.

4

## POINT I

### THE ITEMS SEIZED FROM THE DEFENDANT'S BUSINESS LOCATED AT 1122 CONEY ISLAND AVENUE, SUITE 209, BROOKLYN, NEW YORK SHOULD BE SUPPRESSED AS THEY WERE SEIZED IN VIOLATION OF THE FOURTH AMENDMENT

#### a) Lack of Particularity and Overbreadth

It is well settled that general warrants violate fundamental rights and are forbidden by the Fourth Amendment of the United Sates Constitution. Marron v. U.S., 275 U.S. 192 (1927). The Fourth Amendment of the United States Constitution and Article I, § 12 of the New York State Constitution provide that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." By requiring a particular description of the property to be seized, the Fourth Amendment "makes general searches ..... impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." Marron, 275 U.S. at 196.

> "The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one particularly describing the place to be searched and the persons or things to be seized. The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." Maryland v. Garrison, 480 U.S. 79, 84 (1987).

5

The danger to privacy interests inherent in executing a warrant are particularly acute when the warrant authorizes the seizure of papers, as opposed to physical objects, the relevance of which is more easily ascertainable. Andresen v. Maryland, 427 U.S. 463, 482 n.11 (1976). Indeed, the particularity requirement is especially important in the context of searches of businesses that maintain large amounts of records. "[W]here a business is searched for records, specificity is required to ensure that only records which evidence crime will be seized and other papers will remain private.." United States v. Washington, 797 F.2d 1461 (9th Cir. 1986); see also, United States v. Cardwell, 680 F.2d 75 (9th cir. 1982).

The instant search warrant authorized the seizure of almost every conceivable business record located at 1122 Coney Island Avenue, Brooklyn, New York from the beginning of time to the present. The warrant contains no time period constraints nor does it narrow the field of documents to be seized to those connected with criminal activity.

The United States Supreme Court has cautioned against warrants authorizing such seizure:

> We recognize that there are grave dangers inherent in executing a warrant authorizing a search and seizure of a person's papers that are not necessarily present in executing a warrant to search for physical objects whose relevance is more easily ascertainable. In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized . . . . [R]esponsible officials, including judicial officials, must take care to assure that they are conducted in a manner that minimizes unwarranted intrusions upon privacy.

Andresen v. Maryland, 427 U.S. 463, 482 (1976)

6

The search warrant executed on February 29, 2012 at "the premises known and described as 1122 Coney Island Avenue, Suite 209, Brooklyn, New York" is patently overbroad and lacks particularity (See defendant's Exhibit 1 attached). The warrant is overbroad because the quantity and volume of items sought is unreasonable, and not connected with the specific unlawful activity alleged in the warrant affidavit in support by Special Agent Michael D. Kelley. (See defendant's Exhibit 2 attached). The warrant as opposed to Agent Kelley's affidavit does not describe how the items to be seized are connected with any criminal activity. [1] Nor does the warrant in question limit the search to documents for the narrow time period specifically alleged in the Kelley affidavit. Thus, the search warrant in the case at hand is indistinguishable from a general warrant and permits nothing less than a fishing expedition.

The "affidavit in support for a search warrant" by S/A Kelley applies to six (6) separate "premises". The discussion that is to follow focuses only on "Premises #4", which is the 1122 Coney Island Avenue, Suite 209, Brooklyn, New York location.

The Kelley affidavit indicates that the information he has uncovered relating to the subject premises "is based in part on ten months of Title III wiretaps on four cellphones[2] associated with some of the Target Subjects, my review of some of those interceptions, my conversations with a cooperating witness, as well as my conversations with other law enforcement agents . . . ." (See Kelley aff. para 8).

---

[1]   As will soon be discussed the instant warrant does not incorporate by reference S/A Kelley's affidavit in support nor did Kelley's affidavit accompany the warrant during its execution. See Groh v. Ramirez, 540 U.S. 551 (2004).
[2] The defendant, Andrey Anikeyev's cell phone was not one of the four cellphones subject to court ordered wiretaps.

The ten months of Title III wiretaps alluded to in S/A Kelley's affidavit commenced in October 2010 and concluded in July 2011. (emphasis added). There is no connection in Kelley's affidavit as to how this wiretapping, which occurred over a very finite period of time, relates to his request to search the premises located at 1122 Coney Island Avenue, Brooklyn, New York (hereinafter "Premises #4").

The Kelley affidavit reveals that CW-1 has been the "owner, controller, and/or manager of four No-Fault Clinics" that operated as "medical fraud mills" since a "approximately December 2007"[3] (See Kelley aff. para 9(a)) (emphasis added). The four clinics owned by CW-1 are Maguire Medical Practice, P.C.; McGuire Medical, P.C.; Joseph Vitoulis, DO, P.C.; and Modern Medical Solutions, P.C.

As to his probable cause to search Premises #4, the Kelley affidavit, provides the following bare bones factual recitation to the issuing magistrate:

> With respect to Premise #4:
>
> CW-1 reports that he knows that ANIKEYEV conducts billing for the Modality Clinics that ANIKEYEV controls out of PREMISES #4.
> On February 6, 2012, CW-1 participated in a consensual recording inside ANIKEYEV's office at PREMISES #4. During that recording, ANIKEYEV tells CW-1 that ANIKEYEV knows that ZAYONTS and KREMERMAN (owners of Modality Clinics paying kickbacks to CW-1) "want to continue" and that they had visited ANIKEYEV with an offer. During that same conversation, ANIKEYEV tells the CW-1 that law enforcement has zeroed in on his office and that the best thing to do is to move the accounts elsewhere. ANIKEYEV also discusses giving treatments for 16 minutes so two 15 minute treatment can be billed.
>
> See Kelly aff. para 14(a) and (b)

The Kelley affidavit in support of this search warrant for Premises #4 boils down to the following:

---

[3]    CW-1 did not commence his cooperation with the government until July 2012. It appears that any historical information he could have provided concerning the allegations in this indictment could only have dated back to December 2007.

a) a general non-specific consensual recording between CW-1 and the defendant on February 6, 2012;

b) Ten months of wiretaps from October 8, 2010 through July 2011 which do not provide any criminality regarding the defendant or Premises #4; and

c) information provided by CW-1, that one can only speculate from this affidavit, goes back to 2007.

From this very limited and narrowly defined laundry list concerning the defendant and Premises #4 Agent Kelley received authorization to conduct a search that would allow the seizure of practically everything that had ever been written down or recorded in any way for any period of time at the subject location.

The exhaustive number of items to be seized, without time limitation, by this warrant were listed in "Attachment A" to the warrant (See defendant's Exhibit 4 attached to Notice of Motion). This list specifically authorized the seizure of:

1. Bank account information;

2. Ledgers documenting patient medical treatment, tests provided, and other records related to patient care;

3. Signature stamps;

4. Calendars and patient appointment records;

5. Cellphones of TARGET SUBJECTS found at SUBJECT PREMISES;

6. Checks, cash, and other financial instruments;

7. Computers;

8. Thumb drives;

9. In order to search for the items described above that may be maintained in electronic media, law enforcement personnel are authorized to search, copy, image and seize the following items for either on site or off site review:

1. Any computer equipment and storage device capable of being used to commit, further or store evidence of the federal criminal offenses of wire fraud; mail fraud, bank fraud; health care fraud; and/or money laundering;

2. Any computer equipment used to facilitate the transmission, creation, display, encoding or storage of date, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners;

3. Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants;

4. Any documentation, operating logs and reference manuals regarding the operation of the computer equipment, storage devices or software;

5. Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices or data to be searched;

6. Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data;

7. Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data; and

8. Files, records, programs, logs, electronic communications, scanning programs, financial records, hacking software, and router configuration software.

The warrant in question authorized the unlimited search and seizure of every item listed in Attachment A. At best, The Kelley affidavit provided probable cause to search and seize records regarding alleged "kickbacks" between the four no fault clinics owned by CW-1 and the defendant for the very limited time period indicated in the Kelley affidavit.

Instead this warrant authorized the search and seizure of all bank account information, all ledgers, all checks, and other financial records and computers for unspecified companies or corporations.

Nor did this sweeping warrant limit the search for documents to any specific time period. Viewing the Kelley affidavit in its most favorable light, he only sets forth some indicia of criminality from 2007 to his signing of the affidavit, most if not all of which does not deal with the defendant or Premises #4. There is absolutely no nexus between the allegations in the Kelley affidavit and the body of documents requested to be seized as mentioned above.

Indeed consistent with the generalized nature of this search warrant, agents after rummaging through personal and business items at Premises #4, seized tens of thousands of documents. For the inventory supplied to the defendant by the government listing all items seized at the search warrant site (See defendant's Exhibit 5). The search of Premises #4 was conducted by numerous law enforcement agents and spanned several hours.

An inspection of the physical evidence seized from Premises #4 has revealed that agents seized financial and banking records from a multitude of acupuncture companies from 1999 to 2012. All of the computers and computer equipment were seized by law enforcement agents from this location. Again the warrant did not limit or define the time period of items that could be searched within this computer system.

In addition to seizing the entirety of books and records of numerous acupuncture companies for unlimited time periods, these same agents seized the books and records of an attorney that happened to share office space within Premises #4. The books and

11

records of Ms. Eva Gaspari, Esq. were clearly marked but nonetheless seized. Neither Ms. Gaspari or her law office have any connection whatsoever to this case. The fact that her effects were seized further illustrates the type of "rummaging" that was occurring during the execution of this search warrant by law enforcement.

The warrant at issue contains no time period for the records it seeks to seize and is thus patently overbroad. A warrant's failure to include a time limitation, when such limiting information is available and the warrant is otherwise wide ranging, may render it insufficiently particular and overbroad. See United States v. Abboud, 438 F. 3d 554, 576 (6th Cir. 2006) (holding that a warrant was insufficiently particular because it was not limited to documents from the time period for which the magistrate had probable cause to believe fraud had occurred); bank fraud for a three month period in 1999 did not authorize a search for records from January 1996 to May 2002); United States v. Ford, 184 F. 3d 566,576 (6th Cir. 1999) ("Failure to limit broad descriptive terms by relevant dates, when such dates are available to the police will render a warrant overbroad."); United States v. Abrams, 615 F. 2d 541,545 (1st Cir. 1980) (holding that warrant failed to meet the requirement of particularity; the officer's discretion was unfettered, there is no limitation as to time and there is no description as to what specific records are to be seized . . . the executing officers could not or made no attempt to distinguish bona fide records from fraudulent ones so they seized all of them in order that a detailed examination could be made later. This is exactly the kind of investigatory dragnet that the Fourth Amendment was designed to protect).

If the past activity reflected alleged criminal activity, then there should have been sought with particularity specific items and papers relating to those activities. This was

12

not done, clearly giving no guidance to the seizing authorities on what to seize. U.S. v. Kow, 58 F.3d 423,427 (9th Cir. 1995) (warrant authorizing seizure of 14 different types of business documents overbroad because warrant contained no limit on which documents within which type could be seized and the government did not limit the scope of the seizure to a time frame within which the suspected criminal activity took place); U.S. v. Dale, 991 F.2d 819,846 (D.C. Cir. 1993) (per curium) (warrant authorizing seizure of "business records, including, but not limited to those specifically identified" overbroad because warrant "subjected essentially all of [corporation's] records dated after June 1, 1994 to seizure").

Similarly in Roberts v. United States, 656 F. Supp. 929, (S.D.N.Y. 1987)(rev'd on other grounds, 852 F. 2d 671 (2d Cir. 1988) the court concluded that with no limit as to the dates of the documents to be seized the warrant authorized a general, exploratory rummaging in a person's belongings. In United States v. Hickey, 16 F. Supp 2d 223, 239 (E.D.N.Y. 1988) the court again made clear that the warrants being devoid of a time limitation, authorized searches that both pre-date and post-date the periods of charged criminality. This void rendered support to the defendant's overbreadth argument.

Compounding this warrant's overbreadth is its lacks of particularity. The warrant in question authorizes law enforcement to search for and seize those items listed in "Attachment A" to this warrant. Attachment A, however, does not instruct law enforcement as to how any of the items enumerated in it are connected with any type of criminality. A warrant must be sufficiently specific to permit the rational exercise of judgment by the executing officers in selecting what items to seize. See U.S. v. Liu, 239 F. 3d 138, 140 (2d Cir. 2000).

In Agent Kelley's affidavit he indicates,

> .... there is probable cause to believe that in the Subject Premises there exists evidence, fruits, and instrumentalities of crimes in connection with mail fraud . . . health care fraud . . . money laundering . . . racketeering . . . and conspiracy to commit the foregoing . . .

(Kelley aff. para 2)

The instant warrant does not incorporate by reference Agent Kelley's affidavit in support of this warrant application. Nor does this warrant reference or connect how the items to be seized in Attachment A are related to any alleged criminal activity specified in the Kelley affidavit. In short the warrant provides no guidance to the executing officers on how the items listed in Attachment A relate to any specific criminal activity.

In Groh v. Ramirez, 540 U.S. 551 (2004), the Supreme Court held that "[t]he fact that the affidavit adequately described the 'things to be seized' does not save the warrant from its facial invalidity. The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." Id at 557. The Groh court added:

> We do not say that the Fourth Amendment prohibits a warrant from cross-referencing other documents. Indeed, most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant. But in this case the warrant did not incorporate other documents by reference, nor did either the affidavit or the application . . . . accompany the warrant. Hence, we need not further explore the matter of incorporation. Id. at 557-558 (emphasis added).

The warrant at hand fails on both counts. First it does not incorporate by reference the affidavit of Agent Kelley. Second, Agent Kelley's affidavit did not accompany the warrant at the time of its execution.

14

The fact that the application or affidavit may have adequately described the "things to be seized" does not save this warrant from its facial invalidity. The Fourth Amendment requires particularity in the warrant not in the supporting documents. Moreover, in United States v. Waker, the Second Circuit most recently relied on Groh, noting that the 'affidavit was attached to the search warrant" and the warrant contained "deliberate and unequivocal language of incorporation," in deeming the affidavit incorporated. 534 F. 3d 168,172 (2d Cir. 2008) (emphasis added); see also id. at 173 n.2 (noting that the warrant stated that affidavit "is incorporated herein by reference" and the magistrate had "initialed the [relevant] portion of the attached affidavit").

Thus, in light of Groh and Waker, the Government cannot rely on language in a warrant simply referencing the underlying affidavit to satisfy the particularity prong of the Fourth Amendment; rather, it must attach the affidavit to the warrant and incorporate it by reference using "deliberate and unequivocal language." Waker, 534 F. 3d at 172.

"[T]he problem [posed by the general warrant] is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings ... [The Fourth amendment addresses the problem] by requiring a 'particular description' of the things to be seized." Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). "Rummaging" is exactly what occurred in this case, and exactly what the Fourth Amendment of the United States Constitution and Section 12 of Article I of the New York State Constitution were designed to protect against. Such a search should not be sanctioned, and the property seized from the office space of Premises #4 should be suppressed. The search warrant authorizing the seizure of property at these premises unlawfully left a great deal of discretion to the agents making the search. Such warrants are prohibited and the items

15

seized thereunder must be suppressed. See <u>Stanford v. Texas</u>, 379 U.S. 476, 481-485 (1965).

## POINT I (A)

## DEFENDANT ANDREY ANIKEYEV MOVES TO JOIN IN AND ADOPT BY REFERENCE THE MOTIONS AND MEMORANDUM OF LAW OF HIS CO-DEFENDANTS REGARDING PHYSICAL EVIDENCE SEIZED IN <u>CONTRAVENTION OF THE FOURTH AMENDMENT</u>

Pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, Mr. Anikeyev respectfully moves to join in, and adopt by reference those requests for relief by his co-defendants to the extent they are neither inconsistent with, nor antagonistic to his position concerning the suppression of physical evidence seized in violation of his Fourth Amendment rights.

## POINT II

## DEFENDANT ANDREY ANIKEYEV MOVES TO JOIN IN AND ADOPT BY REFERENCE THE MOTIONS AND MEMORANDUM OF LAW OF HIS CO-DEFENDANTS SEEKING THE SUPPRESSION OF EVIDENCE DERIVED FROM WIRETAP INTERCEPTIONS

The defendant, Andrey Anikeyev, is an individual whose telephonic communications were intercepted pursuant to court authorized wiretaps relevant to this case. He is thus an aggrieved individual who clearly has standing to contest the wiretap orders issued in this matter. See Alderman v. U.S. 394 U.S. 165 (1969); 18 USC §2510 (11).

The defendant respectfully moves to join in, and adopt by reference those requests for relief by his co-defendants concerning the suppression of evidence derived from wiretaps interceptions.

18

## POINT III

## THE DEFENDANT IS ENTITLED TO PRETRIAL DISCLOSURE OF ANY AND ALL INFORMATION FALLING WITHIN THE PURVIEW OF BRADY V. MARYLAND[4] AND ITS PROGENY

It is no secret that a significant portion of the government's evidence will come in the form of testimony from cooperating witnesses, namely a person who has been referred to by the government as CW-1. CW-1 consensually recorded the defendant on February 6, 2012. (See Kelley search warrant affidavit para 14).

The government has indicated to counsel that it is aware of and will comply with its obligations to produce exculpatory information within the scope of Brady v. Maryland and its progeny.

To date the only information counsel has been able to gather concerning CW-1 is that contained in a footnote to Agent Kelley's affidavit in support of a search warrant on page 4. It indicates the following:

> CW-1 pleaded guilty on February 22, 2012, to an Information charging him with RICO conspiracy, health care fraud, mail fraud, and money laundering, pursuant to a cooperation agreement. As set forth herein, CW-1's information has proven truthful, has been corroborated by independent evidence, and is entirely consistent with my own knowledge and experience in the operation of no-fault insurance fraud schemes. In short, other FBI agents and I have found CW-1 to be truthful and credible.

Clearly, the government's response indicates that it does not consider impeachment material to fall under Brady and its progeny. As will be shown below, the government's position is belied by the authority of judges in this Court, the Second

---

[4] Brady v. Maryland, 373 U.S. 83 (1963)

Circuit and the Supreme Court. With this motion, the defendant requests that such impeachment material be produced immediately in order that the defendant can fully exploit it through his own investigation.

### 1. This Court Should Direct The Government To Disclose, At This Time, All Brady Material Which Requires Preparation By The Defendant To Obtain Its Full Efficacy

The Second Circuit has held that exculpatory evidence, which includes material that the defense might use to impeach a critical government witness, must be turned over sufficiently in advance of trial to allow "for full exploration and exploitation by the defense." Grant v. Alldredge, 498 F.2d 376, 382 (2d Cir.1974). Such early disclosure follows the principle that "[o]rdinarily it is disclosure rather than suppression that promotes the proper administration of criminal justice." United States v. Baum, 482 F.2d 1325, 1331 (2d Cir. 1973). See also United States v. Leung, 40 F.3d 577, 582 (2d Cir. 1994)("upon a request by a defendant, the Government has a duty to turn over all material exculpatory evidence in its possession, ... including material impeachment evidence relating to government witnesses.").

In United States v. Green, 144 F.R.D. 631 (W.D.N.Y. 1992), the court had occasion to consider the issue of pretrial disclosure of Brady material where the government offered to disclose Brady material one week prior to trial. The court concluded that this proposal not only failed to satisfy the government's obligations, but more importantly, failed to insure that the defendant would be able to effectively utilize any material disclosed.

After surveying the relevant case law, the court concluded that the resolution of requests for pretrial disclosure of Brady material requires a balancing of several factors. The court acknowledged that, at least in the abstract, unnecessary pretrial disclosure could lead to such potential problems such as witness tampering, bribery or the manufacturing of defense evidence. On the other hand, the court recognized that if the principles underlying Brady were to have any real meaning, in instances in which the information was of such a nature that pretrial preparation would be required to insure meaningful use by the defense, pretrial disclosure of Brady should be ordered. The court turned to the decision in United States v. Pollack, 534 F.2d 964 (D.C. Cir. 1976), for the rationale that it ultimately applied in resolving the Brady issue. The decision in United States v. Pollack, although a Fifth Circuit case was written by Judge Lumbard of the Second Circuit. As Judge Lumbard explained in Pollack:

> Disclosure by the government must be made at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case, even if satisfaction of this criteria requires pre-trial disclosure (citations omitted). The trial judge must be given a wide measure of discretion to insure satisfaction of this standard. While some courts have held that Brady affords no pretrial discovery rights to the defendants (citations omitted) we believe that the application of a strict rule in this area would inevitably produce some situations in which late disclosure would emasculate the effects of Brady or other situations in which premature disclosure would necessarily encourage those dangers that militate against extensive discovery in criminal cases … courts can do little more in determining the proper timing for disclosure than balance in each case the potential dangers of early discovery against the need that Brady purports to serve of avoiding wrongful convictions.

Id. at 973-974.

Districts Courts within this Circuit, on many occasions, have reached the same conclusions as the court in Pollack and Green. In United States v. Mitchell, 372 F. Supp.

21

1239, 1257 (S.D.N.Y. 1973), appeal dismissed and mandamus denied sub.nom. Stans v.

Gagliardi, 485 F.2d 1290 (2d Cir. 1973), the court rejected the blanket assertion "that

Brady imposes no pretrial obligation on ... the government," holding instead that:

> the due process implications of Brady [obligate] the government to
> disclose exculpatory information as soon as the character of such
> information is recognized. This obligation has no chronological
> boundaries, but applies equally to the pretrial, trial and post-trial
> stages of a proceeding.

Id. at 1251 (emphasis in original).

Similarly, in United States v. Deutsch, 374 F. Supp. 289,291 (S.D.N.Y. 1974),

Judge Frankel ordered the prosecutor to permit discovery and inspection of all

exculpatory material as "promptly as reasonably possible." The court stressed:

> it should be obvious to any one involved with criminal trials that
> exculpatory information may come too late, if it is given only at
> trial, and that the effective implementation of Brady v. Maryland
> must, therefore, require early production in at least some situations.

The court in United States v. Crozzoli, 698 F. Supp. 430, 436-437 (E.D.N.Y.

1988), which dealt with impeachment material constituting agreements between the

government and civilian witnesses, held that Brady requires timely pretrial disclosure of

all exculpatory information, stating:

> Surely, such a dilution of Brady [i.e., a reading of Brady as not
> imposing pretrial disclosure obligations] is not warranted by a
> literal reading of that decision, viz:
>
> We now hold that the suppression by the prosecution of evidence
> favorable to an accused upon request violated due process where
> the evidence is material either to guilt or to punishment,
> irrespective of the good faith or bad faith of the prosecution.
>
> 373 U.S. at 87, 83 S.Ct. at 1196 (emphasis added). To permit the
> prosecution to withhold exculpatory evidence despite a request
> until such time as the prosecutor chooses to disclose it, is to permit
> the prosecutor to control, to some extent, the preparation of a defense.

Id. at 436-37 (emphasis added).

The Court in Crozzoli, following the decisions in United States v. Mitchell, supra, and United States v. Goldman, infra, ordered the government to "disclose to the defendant such evidence as it is obligated to disclose by Brady." Id. at 437. See United States v. Goldman, 439 F.Supp. 337,349 (S.D.N.Y. 1977)("if exculpatory evidence is produced for the first time at trial, the defendant may not have an adequate opportunity to effectively utilize the material, particularly if it points to the existence of other evidence helpful to the defendant"); United States v. Shoher, 555 F. Supp. 346, 352 (S.D.N.Y. 1983), quoting United States v. Deutsch, 374 F.Supp. 289 (S.D.N.Y. 1974) (evidence in the government's possession favorable to the defendant, including evidence pertaining to the credibility of government witnesses, should be disclosed far enough in advance of trial to allow for effective "evaluation, preparation and presentation at trial"); United States v. Jones, 85 Cr. 1075 (CSH), slip op. (S.D.N.Y. May 28, 1986)(government ordered to produce Brady materials, including impeachment, immediately, so that defendant's "may have adequate time to evaluate and utilize the information in preparing their defenses"); United States v. DePeri, 778 F.2d 963,983 (3d Cir. 1985).

The following is a non-exhaustive list of Brady related materials that should be immediately turned over to counsel for Mr. Anikeyev:

> a. The arrest and conviction record of CW-1 and any other cooperating witnesses the government intends to use as witnesses at trial.
>
> b. Any and all orders, agreements and memoranda of understanding granting the witness any form of immunity from prosecution or other promises or benefits of any kind whatsoever.

c. The substance of any and all investigations into the witness' conduct or prosecutions involving the witness which might reasonably provide a motive for the witness' cooperation.

d. Any and all records, memoranda and correspondence between the witness and law enforcement authorities which may reasonably reflect on the witness' motives and  relationship with the prosecution.

e. Any and all threats, express or implied, made or directed against said witness.

f. Any witness' statement which conflicts with the prosecution's present theory of the case.

g. Any promise of non-prosecution for any crime made to a witness or his immediate family.

h. Any agreements or understanding by the prosecution to assist the witness or his immediate family.

i. Any fact or allegation concerning criminal or other misconduct of the witness which is not reflected on the witness' criminal record which is known to the prosecution.

j. Any situation known to the prosecutor where the witness could be named as a defendant or co-conspirator, but has not yet been charged.

k. Any other material bearing upon the witness' hopes or expectations (regardless of whether the witness in fact realized his expectations) for his cooperation with the prosecution.

l. All documents and other evidence regarding any physical or mental disease, disability, or disorder affecting any individual the prosecution intends to use as a witness at trial; including, but not limited to, records of hospitalization or other treatments for physical or mental disease, disability or disorder.

m. All documents and other evidence regarding drug or alcohol abuse and/or dependency by any prospective prosecution witness, including but not limited to records relating to treatment of such individuals in federal, state, city of military drug or detoxification program.

24

n. Any exculpatory testimony given by Grand Jury witnesses whether or not the prosecution intends to call such a person as a witness at trial.

o. Any exculpatory statements, whether recorded, written or oral, concerning the case made by witnesses whether or not the prosecution intends to call such person as a witness at trial.

## 2.   The Government Should Be Compelled to Provide all Brady Material, Including Impeachment Material of Government Witnesses

Federal prosecutors routinely ignore the Brady/Bagley mandate by their contention that any material falling under the category of "impeachment," whatever its exculpatory value, need not be disclosed until after the witnesses testify. In so arguing, they mistakenly contend that the Jencks Act, 18 U.S.C. § 3500, somehow supersedes the defendant's Sixth Amendment rights guaranteed by Brady.

There can be no serious dispute over the proposition that Brady encompasses material that "might well alter the jury's judgment of the credibility of a significant prosecution witness." Perkins v. LeFevre, 691 F.2d 616,619 (2d Cir. 1982), citing Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Chitty, 760 F.2d 425,428 (2d Cir.) cert. denied, 474 U.S. 945 (1985) ("The Brady rule applies equally to impeachment and exculpatory evidence"). Thus, in United State v. Bagley, 473 U.S. 667 (1985), the Court stated:

> Impeachment evidence … as well as exculpatory evidence falls within the Brady rule. See Giglio v. United States, 405 U.S. 150,154; 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Such evidence is 'evidence favorable to an accused,' Brady, 373 U.S. at 87, 83 S.Ct. at 1196, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal. Cf. Napue v. Illinois, 360 U.S. 264, 269; 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend").

> The Court of Appeals treated impeachment evidence as constitutionally
> different from exculpatory evidence.... This Court has rejected any such
> distinction between impeachment evidence and exculpatory evidence.
> Id. at 676.

In addition the defendant asks the Court to direct the Government to deposit with
the Court any favorable information which the Government determines is not "material"
within the meaning of United States v. Coppa, 267 F.3d 132 (2d Cir. 2001). In Coppa, the
Second Circuit held that it is for the prosecutor to make the predictive determination
whether exculpatory or impeaching evidence rises to the level of "materiality", and thus
for the prosecutor to determine if and when such evidence is to be disclosed to the
defendant. At the same time, the Coppa court suggested that a district judge may have
discretion "to order pretrial disclosures as a matter of sound case management." Id. at
146.  The Second Circuit has also stated that "in some circumstances the trial court
should not rely on the Government's representations as to materiality of potential
impeachment evidence, but should undertake an independent in camera review of
relevant Government files to determine materiality," noting that "the purpose of an in
camera inspection is to supplement the Government's assessment of materiality with the
impartial view provided by the trial judge." United States v. Leung, 40 F.3d 577, 582-583
(2d Cir. 1994).

The defendant now asks the Court to make inquiry of the Government concerning
any arguably favorable evidence to determine whether it exists and whether the
Government has determined whether or not it is material. If material, the defendant
requests its immediate disclosure so that he can conduct appropriate investigation. If
deemed not material by the Government, the defendant requests that the Court review the
information and make an independent assessment. If the Court determines that the

.information is not material, the defendant requests that the Court retain the information and revisit the issue of its materiality as the case unfolds.

Accordingly, the defendant, Andrey Anikeyev, respectfully requests that any Brady material, including impeachment material, in the possession, custody or control of this prosecutorial agency or any sister law enforcement agency that jointly participated in the relevant underlying investigation, be directed to disclose such information, at this time, to defense counsel.

## CONCLUSION

For the foregoing reasons, defendant Andrey Anikeyev's pretrial motions should be granted in their entirety.

Dated: Brooklyn, New York
      January 10, 2013

Respectfully submitted,

James J. DiPietro
186 Joralemon Street
Brooklyn, New York 11201
(718) 875-4207

Attorney for Andrey Anikeyev

27