UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
United States of America

S7 12 CR 171 (JPO)

-against-


Andrey Anikeyev
                    Defendant.
-------------------------------------------------------X




## DEFENDANT ANDREY ANIKEYEV'S
## MEMORANDUM IN AID OF SENTENCING




James J. DiPietro, Esq.
Attorney for Defendant
Andrey Anikeyev
186 Joralemon Street
Brooklyn, New York 11201
(718) 875-4207

## TABLE OF CONTENTS

page

I   Preliminary Statement ------------------------------------- 1

II   Sentencing Factors To Be Considered
    Under Section 3553 ----------------------------------- 3

III   History and Characteristics of
    Andrey Anikeyev -- ------------------------------------- 5

IV   The Offense Conduct ------------------------------------- 13

V   The Defendant's Early Plea Of
    Guilty And Acceptance Of
    Responsibility ----------------- ------------------------------- 14

VI   Andrey Anikeyev's Health ------- ----------------------------- 15

VII   The Need To Avoid Unwarranted
    Sentence Disparities Among
    Defendants With Similar Records
    Who Have Been Found Guilty Of
    Similar Conduct – 18 USC §3553 (a)(6)  ------------------ 18

VIII Conclusion ---------------------------------------------------- 22

i

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
United States of America

                                         S7 12 CR 171 (JPO)

    -against-


Andrey Anikeyev
                Defendant.
-------------------------------------------------------X


# DEFENDANT ANDREY ANIKEYEV'S
# MEMORANDUM IN AID OF SENTENCING

## I.  Preliminary Statement


      This memorandum is respectfully submitted in connection with the sentencing of Andrey Anikeyev  scheduled for September 5, 2013 at 11:00 A.M. Mr. Anikeyev has pled guilty to a one count information charging him with conspiracy to commit health care fraud in violation of Title 18, United States Code, Section 371. Mr. Anikeyev's history, character and health support a finding that leniency is appropriate pursuant to the sentencing factors reflected in 18 U.S.C. §3553(a).

      I write to present a far more balanced picture of the person the Court is about to sentence. As is typical in virtually all criminal matters which are resolved through a guilty plea, the only information now before the Court with respect to Mr. Anikeyev is his admitted participation in criminal conduct. There is, however, a starkly different side of this defendant which I believe will assist in Your Honor's difficult task of determining an appropriate sentence for him which, as the Court knows must be "sufficient but not greater than necessary" for the crime to which he has pleaded guilty and for which he has taken full responsibility.

To further this last purpose and to supplement Part C of the PSR, I am enclosing for this Court's review various letters written on behalf of my client Andrey Anikeyev. While it is never easy to convey the essence of a person with words alone, we have been greatly helped by Mr. Anikeyev's family, friends, colleagues, and people in his community. Whether written by the defendant, his wife, friend, or school principal, these letters strike the same chords. They all attest to the following attributes- Mr. Anikeyev's dedication to his family, his selflessness, his strength through adversity, and his willingness to help others. Their letters are attached (see defendant's Exhibit 1-11).

It is clear that imposition of sentence by Your Honor will be, in many respects, a positive event for Andrey and his family. Hopefully, sentence will represent a dividing line between his total failure of judgment in having engaged in this criminal conduct for which he is responsible and for which he has taken full responsibility. With the Court's wise judgment, a brighter future --- of which Andrey is clearly capable--- will be his. Sentencing will also bring an end to the strain and uncertainty which has loomed over the entire Anikeyev family since his arrest approximately a year and half ago.

However, before continuing, I must be clear that it is hardly my intention in this Memorandum to attempt to minimize the seriousness of the offense for which Andrey Anikeyev has accepted complete responsibility or the nature of what he has done. As is discussed more fully below, my client understands quite clearly the crime he committed and is extremely remorseful and is prepared to be sentenced.

Nevertheless, even in this, the age of Sentencing Guidelines, albeit discretionary/advisory guidelines, the true measure of any defendant cannot be taken in an isolated fact pattern or even in an isolated series of transactions. Rather, in evaluating what sort of punishment must be meted out to achieve some purpose of general or specific deterrence or rehabilitation, a much broader view of a defendant must be taken into consideration. In any system of structured justice, that view must necessarily include the nature of the defendant's life as well as the cost of his criminal conduct to him as he approaches sentencing.

2

## II. Sentencing Factors which "Shall be Considered" under Section 3553

Surely the Court is far more familiar than counsel with the fact that post-Booker, the guidelines are not mandatory, but are to be considered as merely one of the relevant sentencing factors under 18 U.S.C. §3553(a)(1) and (2). (See United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). The factors to be considered include, in addition to the applicable guideline range, and at least as importantly, the nature and circumstance of the offense, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes, and to provide the defendant with needed educational or vocational training, medical care of correctional treatment in the most effective manner. The statute also directs the Court to consider the kinds of sentences available, the guidelines and policy statements of the Sentencing Commission, including the guideline range, the need to avoid disparity and the need to provide restitution where applicable. Finally, as the Court also knows, the goal is to achieve the oft quoted paradigm from Section 3553(a): "… a sentence sufficient but not greater than necessary to" comply with the above purposes.

### A. The Sentencing Guidelines

Once again, this Court hardly needs counsel to remind it that United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 2005 WL 50108 at *16 (U.S. Jan.12, 2005) and United States v. Crosby, 349 F.3d 103 (2d Cir. 2005) held that "districts courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker, supra, 2005 WL 50108 at *27. More recently, the Court has also held that the Guidelines are but one factor in determining a proper sentence. District Courts must consider, in addition to the Guidelines themselves, each of the sentencing factors contained in 18 U.S.C. §3553(a) and make a determination of "reasonableness" in connection with the sentence imposed. As recently as December, 2007, the United States Supreme Court in Gall v. United States, 128 S.Ct. 586 (2007) spoke quite clearly in holding that appellate courts can no longer require "extraordinary circumstances to

justify a sentence outside the guidelines." Indeed, <u>Gall</u> follows <u>Rita</u>, 127 S.Ct. 2456, 168 L.Ed.2d 203, 75 USLW 4471 (2007) in further deemphasizing the role of the advisory guidelines in the sentencing process. As the Court knows in <u>Rita</u> the Court held that the guidelines are but one factor to be considered in sentencing and that a District Court may <u>not</u> presume that the guidelines range is reasonable. A sentencing court accordingly has "wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." See <u>U.S. v. Cavera</u>, 550 F.3d 180,188 (2d Cir. 2008).

The parties have stipulated to a guideline range of 57 to 60 months. The written plea agreement, however, permits, "either party to seek a sentence different from the Stipulated Guidelines Range, suggest that the Probation Office consider a sentence different from the Stipulated Guidelines Range, and suggest that the Court, sua sponte, consider a sentence different from the Stipulated Guideline Range, based upon the factors to be considered in imposing a sentence pursuant to Title 18 U.S.C. §3553(a). (See defendant's Exhibit 12 attached for a copy of written plea agreement).

### III.        The History and Characteristics
### Of Andrey Anikeyev

I respectfully submit that this sentencing factor weights heavily in this defendant's favor. In considering who Andrey Anikeyev is and what he has been able to achieve in his 39 years, the Court has in this memorandum a wide selection of people whose lives Andrey has affected profoundly, has made a difference, lives in which Andrey was always there during the good and bad times, supporting and providing counsel. Nor was it only immediate family that Andrey helped. As will be demonstrated below, Andrey, has helped others outside of his immediate family unit. I will not repeat the defendant's history, which is accurately set for in the PSR.

Amdrey Anikeyev was born on April 17, 1974 in Minsk, Belarus. In 1993 Andrey married his wife Valentina at the age of 19. Their marriage has produced three sons. Alan is 19 years old, Nicholas is 10 years old and Daniel is five years old.

Andrey accepts full responsibility for the conduct that brings him before Your Honor for sentencing on his plea of guilty. He is extremely remorseful for his actions and has exhibited his remorse to his family, friends and counsel on a number of occasions.

In a letter written to Your Honor, Andrey expresses the pain, remorse and embarrassment he has brought upon himself and his family as a result of his actions. He expresses the following to the Court,

> . . . . I wish to state to Your Honor that I am very sorry for my actions . . . . My actions have caused a great deal of pain to my family for which I am truly sorry. The stigma of this case will follow me for the rest of my life. Your Honor I have a wonderful family and my wife Valentina, whom I met in high school, is providing tremendous emotional support to me during the pendency of this case. We have three sons Alan 19, Nicolas 10 and Daniel 5. My family is all I have and it hurts me so much to realize that I let them down. Not only have I embarrassed and brought shame to myself, but I have also brought shame to my wife and children. This is a fact I will have to live with for the rest of my life.

. . . . . . . . .

.... On September 5, 2013 Your Honor will be pronouncing sentence and I am fully prepared to face the consequences of my actions that bring me into your courtroom. I ask Your Honor to balance all the good things I have done in my life against this terrible mistake in judgment that brings me before you.

See defendant's Exhibit 1 attached

It is clear that no one knows Andrey better than his wife Valentina. They have been married for over twenty years and are raising three sons. She describes the type of husband and father Andrey is. His devotion to his family and remorse.

She writes,

> .... We are very proud of our family, and the fact that we were able to keep our solid relationship through out all this years. We like everybody else had our ups and downs but always knew that we can  rely on each other.
> My husband is a back bone of our big family. He is a good husband,  he is devoted father, he is our provider and he is the person that my three sons look up to. There is no month goes by without my "four boys" doing something together-fishing, skiing, going to the gym, going to Russian sauna, building a bone fire or simply having a "all boys talk". I can't imagine what my boys will do if their father will not be around. Our five year old refuses to go to bed  without his dad.
> As for me Andrey is a love of my life, generous and descent man, father of my three kids. I was 19 years old and 8 month pregnant with our first child when we came to USA with no penny in our pocket. My husband had to work two jobs -day time as electrician and night time as a genitor to put food on our table. He gave me an opportunity to go to college. I graduated on top of my class and   was able to get a good position. My husband is everything to me, there is nothing he would not do for his family.
> Andrey has his Mom, Dad and little sister that live in Belarus. Through out all this years he supported them.

6

His younger sister was able to go to one of the best university in her country, graduated and become a successful business woman. My husband provided a good leaving to his parents and kept the roof over their heads. As a mother of three sons myself I can say that their must be proud of their son. I always say to my kids that the best learning experience comes from your biggest mistakes, and it is ok to make mistakes as long as you are able to acknowledge them, learn through that process and not to repeat them again. Your Honor, for the past year I saw my husband going through an agony of the fact that his actions will cost him his family, the fact that his sons will loose their father. I ask you to show some leniency in your sentencing and give us a chance to stay together as a family.
Thank you for your consideration.

See defendant's Exhibit 2attached

Paragraph 73 of the PSR accurately reflects that the defendant has had a "difficult" relationship with his oldest son Alan regarding his drug dependency. Alan has written a letter to Your Honor on behalf of his father. He stresses that his father Andrey has always been there for him providing guidance through the tough times in his life. He writes,

I felt upset and angry about the whole situation at first, and out of everyone in the family including my mother, my father was the most composed and taught me something very valuable. He taught me that mistakes are made by everyone and the only thing you can possibly do after accepting the consequences is learning how to change the decisions you make for a better life.

When I use the knowledge and logic that my father passed on to me, I succeed. I have battled my own set of problems and he has always been there for me when I asked for help, also when I did not.

Even when I ignored my father and continued making poor decisions, he was still there for me. I'm writing not to justify my father's actions but to explain that you cannot read a

7

book by its cover. I will miss my father very much, I know my entire family and I will be put through a test until he returns.

I can only beg and call upon you who is deciding the fate of my father to have the wisdom and mercy not to break our family and give him the opportunity to correct his wrong and go on with his life.

See defendant's Exhibit 3 attached

Dr. Rodney V. De Jarnnet, the head of the Dwight-Englewood School informs the court about Andrey's personality and his contributing role in the community.

He indicates,

I write to you in support of Mr. Andrey Anikeyev, a parent of children, Daniel and Nicolas, in our school and a father of a very kind family that helps us build strong community. And in doing so, I appreciate your consideration of my thoughts.

It is difficult to image from outside the system in which you work the challenges of your decisions. I have learned in over forty years of my work in education that children and parents learn from mistakes and move forward to become very good citizens of school community. This is especially true of those who possess specific traits or characteristics; caring for others, kindness, passion for what they do and resilience. In our community, Andrey is a caring and loving husband and father who not only treasures the importance of family; he demonstrates each day his concern for and nourishment of community.

As an independent school, we believe deeply in community and all that can be learned through service learning; the actions of giving back to the community and learning through the process of doing so collaboratively and reflecting on what one does. Our community teaches values through giving back and giving to others. And few do this better than

8

Andrey and his family. And he does so through all that he demonstrates in his actions. Andrey lives each day those characteristics of caring, kindness, passion and resilience that I have learned are necessary for one to learn from a mistake. More importantly, I know that Andrey has not only learned, he will move forward in ways that not only make him a better person but through his example, he will be that person who ensures others around him learn from him. Given the opportunity, he can ensure a better community.

. . . . . . . . . . .

Andrey is a father, husband and community member that I can write passionately in support of. And I hope rather than take him away from family and community, you might see in him all the positive he is capable of doing, and now more than ever because of the life experiences he has learned.

See defendant's Exhibit 4 attached

Mr. Anikeyev's willingness to help others is best demonstrated in a letter written by Mr. Edward Andre. In the aftermath of hurricane Sandy he describes to Your Honor the defendant's efforts to help save his gym and counsel the children that attended it. He relays the following to the Court,

. . . . Andrey is a kind, and extremely helpful human being, who always come through in a crisis and is always the first to lend a hand to others, especially in difficult times. Let me give one of many examples. When super storm Sandy hit us a few months ago, I did not think it was possible to suffer so much loss and live through that and come out stronger. Our gymnasium was flooded completely, all the equipment inside was ruined and we had to close our doors to our community for a long time in order to rebuild. I'm not even talking about the huge amount of debt this put us under but the worst part was that we provide a home for so many youngsters in our community, . . . .

In this dark, sorrowful time, Andrey was there to help every day. If not for him being there and his constant support and encouragement I don't know how I would have handled it.

9

As you can imagine it was so frustrating, but he found the time between his own family and ours to do everything in his power to help us. He even got some of the kids involved in some of the smaller projects, to keep them occupied and stay out of trouble. The kids adore him, they relate really well to him, because he always tries to help them and he listens to their problems without judgment or hesitation. He always uses humor to make them feel better and ease some of the tension for them. . . . .

While I do not condone nor excuse any of Andrey's actions, I pray that you will consider relief in the sentencing process. He is a good man, a family man, and a strong father figure, and a true friend. I would like to see him be around and continue to support and encourage all of us by his kindness and presence in our community.

See defendant's Exhibit 5 attached

Mr. Aleksey Zatsepilo, a board certified pharmacist, has known the defendant and his family for over 10 years. His letter lends further insight into the defendant's character and remorse. He informs Your Honor,

My name is Aleksey Zatsepilo, and I am a board certified, registered pharmacist with over 20 years of experience. I have dealt with thousands of people professionally and personally, and can say that Mr. Andrey Anikeyev is a man with great moral character who loves his country, family and friends.

I have known Andrey and his family for over 10 years. They have been dear friends to me and my family. As a friend he is dependable, always a phone call away and willing to help. He has helped me and my family on many occasions – and he did so gladly, never expecting anything in return. In both good times and bad times he has always been there for us. He is the first person to congratulate upon success, and the first to offer help in times of need. My family and I are not the exception; I have seen him give help, advice and support to others openly and compassionately.

10

With his family he is an excellent, loving sincere father who cares about his children's education, health, and happiness. I have attended many of their family functions, reunions, and have been with them on family vacations. I have seen first hand how much he cares about his family, and anyone who has seen them will say exactly the same.

In speaking with Andrey about the actions of which he is accused, he is the fist to admit that he has made grave mistakes that have put his ability to be the family man and friend that he is in jeopardy. Most importantly, he understands the mistakes he has made, has repented, and is focused and passionate about living a righteous life – he is a man who has learned from his mistakes. Which is much more than I can say about many.

See defendant's Exhibit 6 attached

Other charitable deeds by the defendant and his wife are described by Heidi Leigh and Nick Leone, gallery owners in New York. They write,

From time to time our gallery hosts benefits, as a way to give something back, and be part of the solution to many problems. Andrey and Valentina came out to support numerous causes such as Broadway Cares, Toys for Tots and the Jim Henson Foundation. It was always my understanding that they made the effort not only because they both admire being inspired by creative and artistic minds, but mainly to support our efforts to help make the world a better place.

. . . . . . . . . .

We would describe Andrey as a kind and considerate very well-mannered gentlemen. We love the story about how he and his true love, Valentina, came to the United States when they were only 17 years old with nothing more than a dream. Whatever happens, their love has always persevered, and it is evident that the strength of these family bonds are a precious and valuable thing. Much more precious than gold, in fact. It is our hope that the court considers the spirit of this industrious

young man and offer him an opportunity to repair what he has broken and allow this beautiful family to remain intact.

See defendant's Exhibit 7 attached

Other friends and relatives echo the themes put forth in the above cited letters regarding Andrey. They all describe him as a devoted father, husband and family man who is deeply embarrassed and remorseful for his wrongful conduct. Their letters are attached as exhibits for this Courts review. See defendant's Exhibit 8-11 attached.

In U.S. v. Adelson, 441 F.Supp 2d 506 (SDNY 2006), Judge Jed S. Rakoff reasoned when considering various letters written on behalf of the defendant that,

> . . . Adelson's good deeds were not performed to gain status or enhance his image. Most of them were unknown to all but a few people until the time of his sentencing. But, surely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, "the history and characteristics of the defendant."

In the letters cited, various acts of kindness, to family, friends community and others are put forth. I will not recount those facts here but respectfully refer to those materials as exhibits. I do submit, however, that the sort of character and generosity which these letters speak of should inform the Court's decision in sentencing Andrey Anikeyev.

12

## IV  **The Offense Conduct**

On February 15, 2013 the defendant Andrey Anikeyev appeared before Your Honor and pleaded guilty to a one count Information charging him with a conspiracy to commit health care fraud in violation of Title 18, United States Code, Section 371.

During the time period in question Andrey Anikeyev operated a medical billing company and was responsible for submitting bills to health insurance companies for acupuncture services. These bills requested payment for health care services for time periods in excess of the time the patient actually spent with an acupuncturist. For example if a patient spent up to 15 minutes receiving treatment with an acupuncturist the defendant would bill an insurance company for an additional 15 minute period the patient did not actually receive treatment for.[1]

Andrey Anikeyev allocuted at the time of his plea that:

> From 2008 to early 2012 in the Southern District of New York and elsewhere I agreed with others to commit health care fraud and mail fraud.

> I did this by submitting bills through the mail to various insurance companies for acupuncture services that I knew were false. Some of these mailings were to insurance companies located in Manhattan, New York. These bills requested payment for health care services for time periods in excess of the actual time period the patient spent with an acupuncturist.

> I did this with the intent to obtain money from various insurance companies which was not rightfully mine.

The offense the defendant has pleaded guilty to is clearly non-violent. Andrey has no history of any aggressive behavior. I submit that Andrey poses no risk or danger to the community and am confident this Court will balance his life's good deeds against the lapse of judgment that brings him before this Court.

---

[1] In a consensually recorded conversation on February 16, 2012 the defendant discussed with CW-1 that he was billing for 16 minutes so two 15 minute treatments could be billed.

## V The Defendant's Early Plea Of
## Guilty And Acceptance Of
## <u>Responsibility</u>

Andrey Anikeyev was one of the first defendants to plead guilty in this case. The defendant's early plea of guilty relieved both the Court and the Government of pre-trial motion practice and trial and thereby conserved substantial judicial resources by accelerating the resolution of this matter.

Based on the defendant's early plea the government has represented to counsel that they would have no opposition to defense counsel's argument at the time of sentencing that Mr. Anikeyev can receive additional relief from this Court under Section 3553(a) of Title 18. This representation was placed on the record and joined in by the government during the defendant's guilty plea on February 15, 2013. See defendant's Exhibit 13 attached

Again, Mr. Anikeyev accepts full responsibility for the criminal conduct that brings him before this Court. I can state without reservation that he has demonstrated extreme remorse to his family and the undersigned during the pendency of this litigation. He has also been fully compliant with all the conditions of his pre-trial release.

14

## VI <u>Andrey Anikeyev's Health</u>

As reflected in paragraphs 80-81 of the PSR the defendant is presently trying to rehabilitate from right-side arm surgery performed in March of this year by Dr. Viola in Colorado. As will be explained the defendant has a significant history of multiple complicated traumatic injuries to his extremities.

In 2011 as a result of a skiing accident and then another unrelated fall the defendant suffered multiple fractures to his right arm. His right arm was literally paralyzed from the "elbow down for about a year." As explained by Dr. Sergei Kochlatyi,

> [A]fter surgery he complained of severe weakness in the right wrist and fingers extension and numbness. He was going through outpatient physical and occupational hand therapy, but without significant progress and was complaining of persistent weakness of the right hand . . . .
>
> After initial improvement in symptoms after the surgery and physical therapy symptoms have intensified again. Andrey continued to experience lingering, non-improving with physical therapy and PRN pain medication, pain in right arm, hand and shoulder areas associated with numbness, tingling and paresthesias in right hand fingers. Over period of two years patient underwent numerous evaluations by several orthopedic and neuro surgeons in New York and have been told that these symptoms were caused by extensive hardware and scarring around surgical site. Surgical treatment option was declined by surgeons due to high peri-operative risk of possible further damage to the surrounding nerves and low possibility for favorable outcome. Andrey had good fortune to meet Dr. Viola who, after examining the case, decided that favorable outcome is possible and took the risk operating on Andrey. In March 2013 he underwent an extensive surgery to remove the hardware in his right arm to remove bone spurring around hardware margin and to release the radial nerve which was not working properly due to significant post traumatic scarring and chronic inflammation. According to the surgeon report surgery

was successful and positive outcome is possible but not guaranteed. Andrey will require prolong course of rehabilitation to achieve maximum possible improvement. Keeping in mind the extent of tissue damage from initial injury and subsequent chronic injury from hardware and scarring, it will take significant amount of time to see what kind of progress, if any, is possible. In my conservative estimate, Andrey will be needed to have rehabilitation for possibly 1-2 years. During this period he will require periodic interval evaluations to track his progress and adjust rehabilitation regiment if needed. Andrey Anikeyev is right hand dominant and will require prolong re-training to restore function of the dominant hand. Without proposed exercise and training program there is significant chance of further muscle atrophy, joints contractures and loss of hand function.

See defendant's Exhibit 14 attached

His surgeon in Colorado, Dr. Randall W. Viola, has dictated a letter concerning Andrey's recent surgery and extensive rehabilitation. He writes,

I have been asked to dictate a letter outlining the surgical treatment necessary for Andrey Anikeyev. Mr. Anikeyev underwent a right arm surgery for fractured humerus 2 years ago. He has recovered from that very well, however, he has residual right radial nerve palsy and symptomatic hardware. Therefore, on March 29, 2013, he underwent an extensive surgery to remove the hardware in his right arm to remove bone spurring around the hardware margin and to release his radial nerve which is not working properly.

Mr. Anikeyev tolerated the procedure extremely well, however, over the next 3 to 6 months he will start extensive rehabilitation first for 6 weeks to restore the range of motion in his right elbow and shoulder and second from 6 weeks postoperative to 6 months postoperative he will need to embark on an aggressive strengthening program for his biceps, triceps and deltoid. Structured rehabilitation will be extremely important for him and also radial nerve glides will be an equivocal part of his care from the time of surgery to approximately 6 months after surgery.

16

Thank you very much in advance for realizing the importance of a structured rehabilitation program after surgery for Andrey. Should you have any questions or concerns please do not hesitate to contact me at the Steadman Vail Office.

See defendant's Exhibit 15 attached

Dr. Viola allowed Andrey to keep the hardware, plates and screws removed from his right arm as a result of his surgery. The removed hardware I have observed weighs over one pound.[2]

In addition to the above the defendant has had surgery performed on both of his knees as a result of injuries sustained as a paratrooper in the former Soviet army. See Exhibit 14

As indicated by Doctors Viola and Kochlatyi structured rehabilitation will be extremely important to the defendant's recovery. During his rehab Andrey requires periodic interval evaluations. Obviously the need for Mr. Anikeyev to continually monitor his physical condition is of major importance to his health and continued well being. It is highly doubtful that the Bureau of Prisons will provide Andrey with the necessary rehabilitation and periodic testing he requires to obtain full function of his right arm again.

---

[2] A complete set of medical records for the defendant will be made available to the Court upon request.

17

## VII The Need To Avoid Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty Of Similar Conduct – 18 USC §3553 (a)(6)

It is my understanding that the pleas of guilty for the non-Rico defendants (like the defendant) were to a single Count of Title 18, United States Code Section 371. Amongst those defendants who pleaded guilty it is also my understanding their plea agreements were essentially the same, except for the loss calculations that varied for each individual defendant. As the courts in this district and elsewhere have repeatedly reasoned – loss is often a poor indicator to determine a defendant's culpability. Thus "the fact that two fraud defendants have similar or even identical Guideline ranges does not necessarily mean they committed similar offenses." United States v. Ovid, No 09-CR-216 (JG) 2010 WL 3940724 at 7 (EDNY 2010). See United States v. Adelson, 441 F. Supp.2d 506, 509, 512-513 (SDNY 2006) wherein Judge Rakoff criticized the Guidelines "inordinate emphasis . . . . in fraud cases on the amount of . . . . financial loss" and imposed a below Guidelines sentence on a defendant who "was not the originator of the fraud." See also U.S. v. Parris, 573 F.Supp 744,754 (EDNY 2008) (describing the guidelines for white collar offenses as a "black stain on common sense." Accordingly courts have relied on 3553(a) factors in fashioning sentences in health care fraud cases.

Linking the loss amount to the length of the sentence "often results in widely unwarranted sentencing disparity and a lack of certainty in sentencing, and produces sentences grossly disproportional to the actual seriousness of the offense." Alan Ellis, John R. Steer & Mark H. Allenbaugh, At a "Loss" for Justice: Federal Sentencing for Economic Offenses, 25 Crim. Just. 34,35 (2001); See also Alexandra M. Walsh, Andrew George, & Julie Rubenstein, Re-Examining the Sentencing Guidelines for Federal Securities Fraud Cases, 89 Crim. L. Reporter 833 (Sept. 21, 2011) (complaining of "dramatic disparities in [fraud] sentences for similarly situated defendants [and that in] an advisory guideline regime, such a high rate of variance and disparity arguably signals a bad guideline").

18

Courts should therefore be skeptical of Guidelines that "apply without modulation to a wide range of conduct." United States v. Cavera, 550 F3d 180,192 (2d Cir. 2007). Cavera highlighted 2B1.1 as an example which "drastically var[ies] as to the recommended sentence based simply on the amount of money involved." Id. Grouping together defendants with a broad spectrum of culpability may call for the district court to impose non-Guideline sentences based on the 3553(a) factors. Id.; See also United States v. Stewart, 590 F3d 93,136,144 (2d Cir. 2009) (a "district court may find that . . . . there is a wide variety of culpability amongst defendants [under the same guideline] and, as a result, impose different sentences based on the factors identified in 3553(a.")(citing Cavera).

Fraud loss under USSG Guideline 2B1.1 drives a guideline range for a non-Rico defendant, like Mr. Anikeyev, in the same manner it would for a RICO defendant who owned a health care clinic that did not provide any legitimate medical treatment whatsoever. Andrey Anikeyev, a non-RICO defendant did not own a health care clinic. He billed for acupuncture services that exceeded the patients actual treatment with an acupuncturist, but the patient did receive treatment.

The continuing lack of correlation between the amount of loss and a defendant's relative culpability has thus been the subject of much contention. See U.S. v. Emmenegger, 329 F. Supp 2d 416, 427-428 (SDNY 2004) (criticizing the "excessive weight on [the fraud loss] factor" and indicating that loss is frequently a "relatively weak indicator" of the moral seriousness" of the offense or the need for deterrence). See also U.S. v. Prosperi, 686 F3d 32 (1st Cir. 2012)( loss "should not drive the sentencing process" and is a poor indicator for culpability).

The sentences for health care fraud defendants can vary widely. The following cases represent recent sentences given to defendants similarly situated to Andrey Anilkeyev:

- United States v. Smirnov, No. 11-CR-893 (PAC)(S.D.N.Y. 2011) On August 6, 2013 Judge Crotty sentenced Alla Smirnov, the lead defendant in a massive health care fraud case to 38 months in prison. Her loss was $5,722,778 and she was given four leadership points in her plea agreement and PSR. Smirnov's plea agreement had a stipulated guideline range of 70-87 months but the PSR calculated Smirnov's guidelines at 57-71 months. (Probation did

19

not believe the 2 point enhancement for sophisticated means was applicable).

- United States v. Sachakov, 2013 U.S. Dist. LEXIS 2862, at *3-4 (E.D.N.Y. Jan. 8, 2013)(30 months to doctor after trial, where loss exceeded $2.6 million, and guideline range was 97-121 months)

- United States v. Kharkover, No. 11-CR-112 (E.D.N.Y. 2013)( 24 months for $4.6 million loss in physical therapy scam)

- United States v. Langman, No. 11-CR-435 (E.D.N.Y. 2012)( 10 months for doctor defendant where loss was $905,788, guideline range was 24-30 months)

- United States v. Shvedkin, No. 10-CR-347 (E.D.N.Y. 2012)( 5 years probation in $3.5 million kickback scheme where guideline range was 27-33 months)

- United States v. Jadan, No. 08-CR-751 (S.D.N.Y. 2009)(30 months for $1.2 million loss in health care fraud scheme. Guideline range was 46-57 months and defendant was found to be an organizer and a leader)

- United States v. Viktorenkov, No. 05-CR-113 (DLI)(E.D.N.Y.): Two neurologists, Inna Rozenstsvit and Andrew Ivanson, pleaded guilty to making false statements relating to health care matters. Both physicians were affiliated with a medical clinic that submitted fraudulent claims to automobile insurance companies (Ivanson operated out of several such clinics), and both caused the submission of claims for medical tests that were never performed. Ivanson was sentenced to five years' probation with conditions of eight months' home confinement and 500 hours of community service. Rozentsvit was sentenced to four years' probation with a condition of 300 hours of community service

- United States v. Kaplan, No. 11-CR-892 (RMB) (S.D.N.Y.) Leslie Theodore, the nominal physician-owner of several medical clinics that submitted fraudulent bills to automobile insurance companies, was detained the day he was arrested and was released on bail

20

within a day. Theodore pleaded guilty to conspiracy to commit
health care fraud and was sentenced to time served. One of his co-
conspirators Vadim Miloradovich, was a neurologist who worked
at two fraudulent medical clinics. Miloradivich was detained the
day he was arrested and was released on bail the same day. He
pleaded guilty to conspiracy to commit health care fraud and was
sentenced to time served.

As the above cited case law indicates "fraud loss" is often a poor
indicator in determining a defendant's sentence. It is therefore respectfully
suggested that this Court should look to the individual circumstances of the
offense and defendant's individual 3553(a) factors to fashion a just sentence
for those defendant's permitted by the government to plead guilty to an
Information charging a single 18 USC 371 count. Accordingly, judges have
used the 3553(a) factors to fashion sentences in health care fraud cases, often
departing downwardly to a significant extent from the 2B1.1. guideline
which is loss-driven.

## Conclusion

At the sentencing on September 5, 2013, I beseech the Court, for all the reasons set forth herein, to impose a sentence below the guideline range set forth in the PSR. While I concur with the calculations in the PSR which lead to an advisory guideline range of 57- 60 months which must, of course, be consulted but are only advisory, I submit a non-guideline sentence is appropriate. Given the unique facts at bar and all the factors to be considered under Section 3553(a), such a sentence is well within the Court's discretion. As the Court knows better than counsel, the goal to be achieved is a sentence which is "sufficient but not greater then necessary" under all the circumstances. A sentence below the advisory guideline range will clearly meet this statutory standard.

Dated: Brooklyn, New York
      August 15, 2013

Respectfully submitted,

James J. DiPietro
Attorney for defendant
Andrey Anikeyev
186 Joralemon Street
Brooklyn, N.Y. 11201
(718) 875-4207

To: AUSA Carolina A. Fornos
    (by ECF)
    Ross N. Kapitansky
    U.S. Probation Officer